### CONSTRUCTION OF CONTRACT AS TO QUALITY OF RAILS.

Circuit Court of Cuyahoga County.

HENRY R. FISHEL AND JOSEPH D. MARKS, A CO-PARTNERSHIP DOING BUSINESS AS FISHEL & MARKS, v. J. A. C. GOLDSTEIN.

Decided, January 11, 1909.

A provision in a contract for the sale of rails that they shall be "same as was inspected" means that all rails tendered or delivered shall be equally as good as those which had been inspected.

*W. C. Ong,* for plaintiff in error.
*Klein & Harris,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The relation of the parties to each other is the reverse in this court of the relation they sustained to each other in the court below. The terms plaintiff and defendants as used in this opinion will refer to the parties as they were below.

The plaintiff brought suit for damages for an alleged violation of a contract. The result was a verdict and judgment in favor of the plaintiff, and this proceeding is brought for the purpose of reversing said judgment on account of errors which it is alleged were committed on the trial.

The contract which is the foundation of the suit is in writing and was entered into originally between the defendants and one B. C. Scott, and such rights as the plaintiff has, resulted from a transfer by Scott of his interest in the contract to the plaintiff. The contract is evidenced by two paper writings which read as follows:

"CLEVELAND, O., Apr. 10, '06.

"Option.

"It is mutually agreed by Henry R. Fishel and Jos. D. Marks, a co-partnership doing business under the name of Fishel & Marks, and B. C. Scott, both of the city of Cleveland, Ohio, witnesseth:

"For a valuable consideration we the said Fishel & Marks hereinafter called the seller do hereby give the said B. C. Scott,

hereinafter known as the buyer an option until April 12th, '06 inclusive, for 1250 tons of 56 and 60 T. relaying rails, assortment to be half and half of each.   Same as was inspected by B. C. Scott, at the seller's yard 1940 and 50 Wilson avenue, in the said city.   Price to be twenty-two ($22.40) dollars and 40c per gross ton, also angle bars enough to fit the above mentioned lot of rails.   If angle bars are odd sizes and do not fit the above mentioned rails, the seller hereby agrees to repunch angle bars and guarantees the fit of all angle bars to the above mentioned rails.   Any rails left over shall be returned to the above mentioned concern.   Price of angle bars to be twenty-five dollars ($25) per gross ton f.o.b. cars to Cleveland, O., same to be shipped at once.   Draft to be attached to B. L.   Inspector of buyer to inspect rails wherever rails are, at seller's expense.

"Signed in duplicate this 10th day of April, 1906.

"FISHEL & MARKS,

per H. R. FISHEL,

"B. C. SCOTT.

"Signed in the presence of Benson McIlrath."


"FISHEL & MARKS,

"City.

"*Gentlemen:*   I hereby accept your option given me on 1250 tons of 56 and 60 lbs relaying rails also angle bars to fit same.

"Kindly confirm this by return mail, and oblige,

"Respectfully yours,

"B. C. SCOTT."

The contract was never carried out and no property was ever delivered under it.

The plaintiff says that the reason for not carrying the contract out was the default of the defendants, which the defendants deny and allege that the fault was wholly with the plaintiff. An examination of the record in the case leads us to the conclusion that there was some confusion as to the rights of the parties both growing out of the manner in which the case was tried.   As we understand this contract, certain rails of the description named in the contract had already been inspected by Scott.   The defendants were bound already to furnish to the plaintiff rails which would answer the description by being of the proper weight and by being T relaying rails, and all rails of the quality answering this description which had been in-

spected by Scott the plaintiff was bound to take, and the business of the inspector who was to be furnished under the terms of the contract by the plaintiff and paid by the defendants, was to determine only whether the rails offered by the defendants were T relaying rails of the proper weights and were either the rails which Scott had inspected or T relaying rails of the same weight and of equally good quality. The plaintiff insisted on an inspection of rails apparently not for the purpose of determining whether they were such as Scott had inspected, but whether they were such as were satisfactory to him as T relaying rails.

The evidence of Mr. George B. Schultz, who was the first inspector whom the plaintiff sent to inspect the rails, shows that when he went to the defendants' yards to inspect rails Mr. Scott went with him and pointed out a pile of rails, and said they were the rails which he had inspected. The defendants claim that they being the rails which Scott had inspected were rails which the plaintiff must accept in fulfillment of the contract in so far as they would come under the description of T relaying rails of the right weight. They did not claim that broken or twisted rails would come under the description, but aside from that, these rails must be accepted because they were T relaying rails which Scott had inspected, and which by the terms of the contract were the kind of rails purchased.

Without stopping to quote extensively from the charge as given, it is sufficient to say that the court left to the jury the question of the quality of rails which were to be furnished under the contract, without instructing them that to the extent that the rails offered were those which Scott had inspected, or were of as good quality as those which Scott had inspected, they were rails which the plaintiff was bound to take, and then we think the charge in this regard was misleading. A quotation from the charge will show in what wise we think the charge was misleading; speaking of the words used in the contract "T relaying rails" the court says:

"The plaintiff claims that that term meant the relaying rails, uniform length, good ends, uniform and standard borings,

straight and suitable for relaying or side-track purposes. The defendants contend that, as used in the contract, the term meant the relaying rails used and suitable and capable of being used for relaying purposes.''

Again the court say:

''The plaintiff does not claim that he was ready and willing to receive and accept 56 and 60 ft. tee relaying rails that were merely suitable or capable of being used for relaying purposes, therefore, if you find that the term, 'tee relaying rails' meant 56 and 60 ft. tee relaying rails, capable of being used or suitable for relaying purposes, subject to the buyer's inspection, a provision of the contract I will hereafter more particularly call your attention to, then your verdict will be for the defendant. If you find that this term, as used in the contract, was used to describe tee relaying rails of the character and grade as claimed by the plaintiff then you will consider whether the plaintiff was ready and willing to perform his part of this contract.''

The court nowhere in the charge says (and this the defendants were entitled to have said, or in substance were entitled to have said): ''If you find that the defendants were ready and willing and offered to deliver to the plaintiff the proper amount of 56 and 60 ft. T relaying rails of the quality such as Mr. Scott inspected, then your verdict must be for the defendants, without reference to whether the rails came up to another and higher standard or not.''

The standard for determining whether the rails offered were such as the defendants contracted to furnish was fixed by the rails which would be properly described as 56 and 60 ft. T relaying rails and which were equal to those inspected by Scott.

Nowhere in the charge is it distinctly pointed out that the rails inspected by Scott fixed the standard which the defendants were to furnish, and because of this failure thus to distinctly point out to the jury the standard which was to govern in determining the quality of rails to be furnished we think the charge was misleading, and that the jury under the charge might well have reached a conclusion that the rails must be of a better quality than those inspected by Scott, and because of this and of

different rulings on the matter of evidence that were based upon any theory other than that the standard was fixed by the character of the rails which were inspected by Scott the judgment is reversed and the cause remanded for further proceedings.